## CHICAGO BRIDGE & IRON WORKS v. SABIN et al.

No. 14789—Opinion Filed Dec. 9, 1924.

**1. Master and Servant—Workmen's Compensation Law—Disability Prolonged by Refusal to Take Treatment—Effect on Award.**

Where an employe is injured and claims compensation under the Workman's Compensation Laws of this state, and receives the same up to and including the date when such injured employe could have been cured had he submitted to medical and surgical treatment in no manner endangering life to the slightest degree, or occasioning pain, he cannot recover compensation for an increase of disability due to his failure to accept such treatment and use ordinary care to avoid aggravating the injury.

**2. Same—Agreed Facts as Basis for Award —Review.**

An agreement entered into between the employer and employe as to the facts with relation to the injury, and approved by the Industrial Commission under section 7294, Comp. Stat. 1921, under which agreement the employe has received a lump sum amount, is not a release of liability for the injury sustained, but is the basis of the award of the Industrial Commission, and an award made therein has the same force and effect as an award made upon a hearing and may be reviewed under the provisions of section 7296, Comp. Stat. 1921.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from State Industrial Commission.

Action to review award of workman's compensation to E. S. Sabin. Reversed.

Oliver C. Black and Moss & Stephens, for plaintiff in error.

George F. Short, Atty. Gen., for defendant in error.

Opinion by RUTH, C. This action was originally instituted by E. S. Sabin (who will hereinafter be called complainant) filing his claim with the State Industrial Commission, for compensation for injuries received while in the employ of the plaintiff in error, who will hereinafter be designated "respondent."

From the claim filed it appears claimant was employed by respondent, at Bristow, Okla., and on July 20, 1922, he was unloading rivets from a wagon and was injured by reason of a box of rivets slipping, and his claim alleges "his hip was dislocated; spine injured, and ligaments torn, resulting in neutritis." At the time of the accident he was receiving $3.60 per day.

The report of the respondent filed with the Commission shows claimant was a laborer carrying water and had been employed 3 days. That he was injured by trying to keep a box of rivets from falling on his feet; was injured on July 20, 1922, returned to work on July 21, 1922, and continued to work until July 25, 1922, when he "was overcome by heat while carrying water." Respondent answering further says it provided medical attention by employing Dr. King of Bristow, Okla.

Dr. King's report of July 26, 1922. describes the complainant's injuries as "severe bruises over region liver and ninth and tenth ribs badly bruised with probable fracture." "Applied liniments with splints and advised complete rest," and the doctor thought that complainant's disability is likely to exist "ten days to two weeks."

The report of initial payment of compensation discloses the rate was $10.35 per week, and respondent paid $57.75 from July 26th to August 29, 1922.

A hearing on the claim for compensation was held at Bristow on December 6, 1922. On October 10th complainant was examined by Dr. Earl McBride of Oklahoma City; who reported that "this man is not able to work at this time. * * * It cannot be said how long he will be disabled." Dr. McBride recommended a plaster cast be applied "around hips and down over right leg to knee."

Dr. Thomas A. Buchanan made an examination and reported that he was "satisfied that such injuries can be corrected by the application of immoblization and this can be best administered with the aid of a plaster cast."

On January 6, 1923, respondent filed its motion to be relieved from payment of compensation after April 30, 1923, showing they have paid the compensation up until the last said date, and have offered to provide the medical attention and treatment advised by the physicians; that such treatment is not unusual and will not endanger claimants life, and offer to pay all plaintiffs debts, and provide for and support his family.

On January 11, 1923, the Commission made the following order:

"Now on this the 11th day of January, 1923, the above cause coming on for consideration upon motion of the respondent to discontinue compensation as of April 30, 1923. The Commission, after examining said motion, the records on file, and being otherwise well and sufficiently advised in the premises, finds; That the claimant, E. S. Sabin and the respondent, The Chicago Bridge and Iron Works, have entered into an agreement whereby the claimant is to receive $565.20, as a full and final settlement tfor the injury received by the clamant while in the employ of the respondent on July 20, 1922.

"It is Therefore Ordered: That the motion of the respondent to discontinue compensation as of April 30, 1923, be and the same is hereby sustained. and the agreement entered into between the said claimant and the respondent on the 27th of December, 1922, is hereby approved."

The record contains three affidavits signed by "D. W. Dickson. M. D." " S. C. Venable, M. D." and "V. L. Terrill, M. D.", respectively. One of these examinations appears to have been made on January 12, 1923, and two on January 13, 1923, but as their report filed with the Commission is in the form of an ex parte statement, the respondent being afforded no opportunity to cross-examine the witnesses, the affidavits are not properly a part of the record and will not be considered by this court.

On January 15, 1923, claimant filed with the Industrial Commission a "Motion to review award" as follows:

"Comes now the claimant in this cause and moves the Commission to review the award made on the 19th day of December, 1922, for the following reasons:     That at the hearing to determine the extent of claimants disability it was found that claimant was only entitled to a partial disability and allowed compensation at the rate of ten dollars thirty-eight cents, ($10.38) per week for ninety days, whereas, a subsequent physical examination shows in an X-ray picture that the hip bone is cracked, and that the hip bone has been severed from the spinal column resulting in a permanent disability; that at the time of making the award the X-ray picture did not show any injury and the examining physicians differed in their opinions as to the extent of the injury.

"Whereas, claimant requests the Commission to review the award made on the above date and render a decision in accordance with the facts herein stated."

Thereafter the respondent filed its motion to dismiss claimant's motion to review the award, which motion was in the following words and figures, to wit:

"Comes now Chicago Bridge and Iron Works, respondent in the above entitled cause and hereby moves this Honorable Court to dismiss the motion filed by the claimant herein and styled a Motion of Claimant to review award for the following reasons, to wit:

"First. That there never was any specific award made by this commission in this cause.

"Second, That in December, 1922, upon the urgent request of the claimant herein this respondent made a full and complete and satisfactory settlement with said claimant as is evidenced by the agreement between employer and employe as to the payment of compensation of file in this cause.

"Third. That a final settlement receipt on commission form No. 7 was duly signed and executed by said claimant herein on the 27th day of December, 1922, and the same is on file with the papers in this cause and said receipt is now hereby specifically referred to as a part hereof to the same extent and for the same purpose as if herein set out in full.

"Fourth. That on, to wit, the 11th day of January, 1923, this Honorable Commission reviewed the settlement made between respondent and claimant and after thoroughly examining the records found that a full and final settlement for the injury claimed has been made and entered into on the

27th day of December 1922, and that said agreement was approved by this Commission.

"Fifth, That the order made by the Commission, on the 11th day of January, 1923, heretofore referred to was a final order, to which the claimant made no exceptions and took no appeal and said final order should now be considered the final judgment of this Commission in this case and the motion of the claimant to have this case reopened and the former settlement reviewed should be denied and the motion dismissed."

A hearing was held at Tulsa, Okla., on September 8, 1923, on the motion of complainant to review the award, and after hearing had, the commission made its order requiring the respondent to "pay claimant compensation, at the rate of $10.38 per week, commencing April 30, 1923, less any sum heretofore paid, until the termination of disability or until otherwise ordered by this commission."

From this order the respondent brings this cause here regularly for review, and as error and ground for reversal, urges two points, to wit: First, The claimant unreasonably refused medical treatment of any character and if his injuries are now of a permanent character, this result has been occasioned by the unreasonable attitude of the complainant in refusing medical treatment, and, second, that having accepted a lump sum settlement, and the same having been approved by the Industrial Commission, the claimant is bound by it, and the same is final.

Counsel for respondent as well as counsel for the Commission, in their briefs admit, with regard to the first proposition, that:

"The test is whether the claimant in refusing medical treatment acted reasonably. Dr. McBride, who examined claimant on October 10th, at the request of the Commission, found a 'tenderness over the right sacro-iliac about one inch square,' and advised immoblization by the use of a plaster cast. Dr. Buchanan examined claimant on December 19, 1922, at the request of Industrial Commission and found a 'tenderness over the posterior part of the crest of the illium, about the size of a silver dollar,' and recommended immoblization with the aid of a plaster paris cast, and 'Is satisfied the injuries can be corrected by this treatment.' "

The complainant ignored the advice of the physicians, and refused to take the treatment, and so far as this record discloses, he has persistently refused medical aid of any character, except the bathing with liniments and the application of splints furnished by Dr. King on July 26, 1922.

Dr. Dixon, employed by claimant, examined him in spring of 1923 found "his hip bone had slipped on the sacrum where the hip bone is attached to the spine which is not a solid joint." No paralysis: no nerve sensation lost as far as he could find.

Dr. Venable, employed by claimant, examined him in January, 1923, and found, "there was a slight slipping of the ilium bone, large bone of the hip, on the sacral bone, next to the last bone on the spine." Dr. Terrell, employed by claimant examined him in January, 1923, and found "the right ilium had slipped on the sacral joint."

Dr. Smith, who examined complainant in September, 1923, during the progress of the trial, and about one hour before the doctors testimony found "a slight impairment of the right sacro-ilium joint, limbs the same length; no pain on flexion of the thigh on the body; motion of hip joint perfect, no pain attending any effort."

Considering the testimony of six physicians who examined complainant, there can be no doubt the seat of the trouble was in the sacro-ilium joint, which one of the doctors described as "not a solid joint."

Two of the doctors who examined claimant shortly after the accident strongly advised placing the injured member in a plaster of paris cast, for the purpose of immoblizing the joint until the muscles, ligaments, and tendons were so repaired and strengthened as to hold the joint in place, but this treatment the complainant refused to submit to, although it is a matter of common knowledge that incasing an injured leg in a plaster cast is not dangerous to life, and while professing no knowledge of medicine or surgery, it appears to the lay mind that the treatment advised was plain, simple, practically painless, though inconvenient perhaps, and the reduction of a fracture, or displacement or dislocation of a joint, and the immoblization of the injured part, by splints or otherwise, would be the first remedy appealing to a man injured, perhaps hundreds of miles from medical aid.

After complainants refusal of any medical treatment, so far as this record discloses, four doctors examined him, three of these examinations were made six months after the injury was sustained and one, fourteen months thereafter, and the doctors agree that the "sacro-ilium joint had slipped." It requires no excursion into the

realms of conjecture or speculation to arrive at the conclusion that this "slipping" was the natural and inevitable result of the complainants refusal to submit to immobilzation and his continued use of the injured member while in a weakened condition.

The complainant owed a duty, not only to the employer, but to himself and family, to restore himself to perfect health as speedily as possible, and to this end he was required to act reasonably, and this, it is apparent, he has wholly failed to do.

Even at the time of the hearing 14 months after the accident, in response to the following question by the court: "Q. Are you willing to submit to some treatment to be given you which will not cause you undue pain. or endanger your life, and with the promise of restoring you to your health?" the complainant replied: "A. I been put off so long, I know it wouldn't do me no good. Willing to take it if it would do me any good."

Complainant had not "been put off" but was offered this treatment immediately after the accident, and still sets up his own judgment against that of eminent physicians and surgeons.

Counsel for claimant and the Industrial Commission admit the test is "Did the injured employe, in refusing the treatment advised, act reasonably." Honnold, Workmen's Compensation, pp. 525-526; Cozens-Hardy M. R. Tutton v. Owner of Steamship Majestic, 2nd. Brt. Work. C. C. 346, C. A.

Section 7288, Comp. Stat., provides:

"The employer, shall promptly provide for an injured employe such medical, surgical, or other attendance or treatments, nurse and hospital services, medicine. crutches and apparatus as may be necessary, during 60 day after the injury, or for such time in excess thereof, as, in the judgment of the Commission may be required."

In Weaver v. Eyster & Stone, 1 Cal. I. A. C. Dec. 563 (10 Neg. Com. Cases, p. 193) it is held:

"Flagrant disobedience and neglect by the injured employe of the instructions of the physician in charge of the case will be deemed a sufficient defense to further liability where the period of normal recovery has expired."

Pacific Coast Casualty Co. v. Pillsbury et al. (Cal.) 153 Pac. 24, holds that an injured workman cannot recover compensation for an increase of disability due to his failure to use ordinary care to avoid aggravating the injury.

Mason v. Knight, 1 Cal. Industrial A. Dec. 493, holds:

"Where the evidence shows that by the date of the filing of the application for compensation, the injured * * * should have been wholly cured, and would have been had he given his injured leg the necessary exercise to get it back into commission, the applicant is not entitled to compensation thereafter. It would be unfair to charge the employer with a disability prolonged by the disinclination of the injured man to make the cure complete."

To the same effect are Telford v. Healy-Tibbets Cons. Co., 3 Cal. Ind. A. Cases Dec. 41; Bolton v. Bridgeport et al., 1 Conn. Comp. Dec. 515: Porter v. Noble, 1 Cal. I. A. C. Dec. 588: Fox v. Galland Mercantile Laundry, 2 Cal. Ind. Ac. Comm. Dec. (1915) 72 Paddington Borough Council v. Stack, 2 B. W. C. 402.

It is not for this court to question the motive prompting complainant to refuse medical treatment. but in view of the testimony of Dr. Smith, who examined him 14 months after, and found "no pain, on flexion of the thigh on body" "motion of hip joint perfect; no pain attending any efforts; limbs the same length," and the testimony of Dr. Dixon, who testified claimant "could walk without crutches; no paralysis; no nerve sensations lost in the leg" it does impress this court as peculiar that an otherwise able-bodied man, capable of earning $20 per week, would be content to draw $10 per week compensation, where there was a possibility of his complete restoration to health by submitting to a painless treatment such as prescribed by his physicians.

"An injured workman should submit to such treatment, medical or surgical, as involves no serious risk or suffering; he should submit to such operation as a man of ordinary manly character would undergo for his own good, in a case where no question of compensation due by another existed." Honnold on Workmen's Compensation 523; Donnelly v. Baird and Co., Ltd, 45 Scottish Rep. 394.

"An employe refusing to have a simple operation performed on request of the insurer may deprive him of his right to further compensation." Vitale v. Fid. and Dep. Co. of Md., 2 Mass. Work. Comp. Cases 425; Ollie v. Travelers Insurance Co., 2 Mass. Work. Comp. Cas. (1914) 676, 10 N. and C. C. A. 187; Warnken v. Moreland and Son, Ltd., 2 B. W. C. C. 350; Walsh v. Lock and Company, 7 B. W. C. C. 117.

In arriving at the conclusion that complainant acted unreasonably in refusing the simple medical or surgical treatment ad-

vised by the physicians, and that the Industrial Commission committed error in awarding additional compensation, we do so fully cognizant that this court has held in Henley v. Oklahoma Union Ry. Co., 81 Okla. 224, 197 Pac. 488, that: "The State Industrial commission is without jurisdiction to order an injured employe to submit to a major operation involving risk of life however slight, in order that the pecuniary obligations created by the law in his favor against his employer may be minimized." but the case at bar does not fall within the scope of the decision in the Henley Case, for the reasons herein stated.

As to the second assignment of error, we call attention to St. Joseph Mining Co. v. Pettitt, 90 Okla. 242, 216 Pac. 657, wherein it is said:

"The petitioner relies upon the following provision of section 7294, Comp. Stat. 1921, to wit: 'If the employer and the injured employe shall reach an agreement as to the facts with relation to any injury, for which compensation is claimed under this act, a memorandum of such agreement, in form as prescribed by the Commission, and signed by both the employer and employe, may be immediately filed by the employer with the commission, and if approved by the Commission, shall, in the absence of fraud, be deemed binding upon the parties thereto; such agreement shall be approved by the commission only when the terms conform to the provisions of this act.' "

The court, construing this section of the act, said:

"It is not necessary for us to determine here whether an agreement constituting an absolute release of liability for the injury inflicted can be entered into between the employer and employe, or the insurance carrier, so as to take the case out of the Workmen's Compensation Act. The agreement entered into between the parties to this suit is not and does not purport to be a release of that character, but is an agreement executed in accordance with the statute and provides: 'We, J. C. Pettitt, residing at Picher, Okla., and St. Joseph Mining Company, have reached an agreement in regard to compensation for the injury sustained by said employe and submit the following statement of fact relative thereto.' "

The above agreement is identical with the agreement entered into. in the case at bar, and this court in the Pettitt Case, supra, said:

"This agreement under the terms of the statute is an agreement as to the facts with relation to the injury and does not purport to be a release of liability."

We, therefore, find no error in the order of the court reviewing the award of Janu-

ary 11, 1923, on the second assignment of error, but for the reasons herein stated, under the first assignment of error, the award of the Industrial Commission of September 21, 1923, extending the period of compensation from April 30, 1923, and until further order of the court, should be reversed and remanded with instructions to the Industrial Commission to vacate its order of September 21, 1923.

By the Court: It is so ordered.

Note.—See C. J.-Cyc. Workmen's Compensation Acts, §§ 94, 106.