## CITY OF TULSA WATER DEPARTMENT et al. v. BARNES et al.

No. 25290.　Feb. 26, 1935.

Roscoe E. Harper, Gentry Lee, and Roy V. Lewis, for petitioners.

J. Berry King, Atty. Gen., Robert D. Crowe, Asst. Atty. Gen., B. A. Hamilton, and Park Davis, for respondents.

WELCH, J.　On October 10, 1931, claimant received a personal injury while in the employ of the City of Tulsa Water Department. The injury was caused by a blow on the left side of the head by an iron pipe, received while he was dragging the pipe into a ditch, and resulting in a fracture of the skull. The injury was such as to be within the terms and contemplation of the Workmen's Compensation Law of this state.

Proper claim was filed and proceedings had before the Industrial Commission, and considerable testimony was heard by the Commission in July and September of 1932, relating to the nature and extent of the injury and disability caused thereby. After the taking of this testimony an agreement was entered into by the parties on form 14, as provided by the Commission, and filed in the cause on September 30, 1932. This agreement was approved by the Commission on October 6, 1932, the order approving same specifically reciting the terms of the agreement as follows:

"* * * The agreement shows that the respondent and its insurance carrier have agreed to pay and the claimant has agreed to accept the sum of $115.45 or 7½ weeks compensation at the rate of $15.39 per week on account of the 7½ per cent. permanent loss of hearing in claimant's left ear due to an accidental injury sustained by the claimant on the 10th day of October, 1931; claimant having been paid compensation for temporary total disability in the sum of $343.70 prior to this date, by terms of this agreement, claimant to receive an additional sum of $166.72, or 10 weeks' and 5 days' compensation, for temporary total disability, the respondent and its insurance carrier to pay all medical and hospital bills incurred by reason of said accidental injury. * * *"

On June 22, 1933, the claimant filed his motion to reopen the cause for further award upon change in condition, alleging therein that since the approval of the agreement on October 6, 1932, he had suffered a change in condition, in that his general physical condition had grown worse, and that he at the time of the filing of the motion was unable to engage in any manual labor. He alleged, further, that since the

prior award he had suffered from severe dizzy spells, which have increased in number and severity, and that he has become subject to epileptic seizures of great severity, all of which he alleges to be the direct result of the injury.

Hearings were conducted upon this motion at which the testimony of some eight or ten witnesses was taken. Most of the witnesses were doctors who had examined claimant. On December 8, 1933, the Commission made its further order wherein it found that claimant's condition had changed for the worse since the prior award, and further found that he was "now temporarily totally disabled and in need of further medical care and treatment." An award was made in conformity with these findings. It is this order of December 8, 1933, which petitioners seek to vacate in this action.

The evidence discloses, without dispute on the part of claimant, that at the time of the injury claimant already had a bony growth on his left forehead. The evidence further indicates that this growth was in front of the fracture, the line of fracture apparently beginning behind claimant's left ear and extending forward and terminating before reaching this growth. There is some testimony to the effect that the injury may have affected or involved this growth. This growth is referred to in the testimony as a tumor, lesion, osteoma, exostosis, bony growth, pathological condition, bone destruction, bone waste, and excess calcification.

Petitioners urge as grounds for vacating the award several distinct propositions, all of which, however, relate to the sufficiency of the evidence to support the findings and award. The applicable rule in such cases is well established, and is restated in syllabus 1 of Pine v. Nowlin et al., 153 Okla. 111, 5 P. (2d) 118, as follows:

"In a proceeding in the Supreme Court to review an order of the State Industrial Commission, such proceeding is to review errors of law and not of fact; the finding of fact by the Industrial Commission is conclusive upon the court and will not be vacated by the court where there is any competent evidence reasonably tending to support the same. Stringtown Crushed Rock Co. v. Industrial Commission, 128 Okla. 188, 261 P. 973."

The first proposition urged is that the claimant failed to show a change in condition between the date of the original award and the date of hearing.

An examination of the record on this point discloses that the claimant testified that beginning about March, 1933, he commenced to have fainting spells, when he entirely lost consciousness for a period of time from one hour to seven or eight hours, and that these spells occurred about every ten, 15, or 20 days since March, 1933; that he did not have any such spells prior to March, 1933, and that he had suffered no kind of injury since September, 1932. He stated that he had been unable to do any heavy labor during such period of time; at the same time he testified that he and family had done some garden work, and that he had worked at "made work," earning about $10 per month, but that at the time of his testimony he was unable to do manual labor.

On cross-examination he stated that he suffered from headaches at the time of the prior award, but that his headaches were more severe all of the time. That outside of the headaches and the fainting spells he was able to observe no appreciable difference in his physical condition from the time of the first award to the date of hearing. Dr. E. P. Nesbitt testified that the convulsions with which claimant was suffering were becoming worse, and that he was in worse condition at the time of hearing than when the doctor had first seen him a few months prior thereto; he stated as his opinion that these convulsions were caused by pressure on the brain as a result of the fracture, and that such injury would likely cause the claimant to become progressively worse. Dr. McKenzie testified on this point as follows:

"Q. Now, Doctor, assuming that since March, 1933, he has developed those seizures —what we laymen call fits—what would you say as to whether or not his condition has changed since September, 1932? A. I would say, though I couldn't find any physical evidence outside of signs of slight irritation of the brain—I would say his mental condition or nervous symptoms has changed remarkable. Q. For better or worse? A. Worse."

There is evidence in the record to the effect that claimant did not suffer these spells prior to March, 1933, and the history of the case referred to in the quoted questions and answers likewise finds ample support from the record here.

In view of the foregoing testimony, we hold that there is competent evidence to support the findings and conclusions of the Commission that the condition of claimant had changed for the worse since the order and award of October 6, 1932.

Petitioners next assert that claimant's dis-

ability did not result from the injury. They contend that the disability shown and claimed by the claimant was the result of this bony growth which he had on his head prior to the injury. It is true that a number of witnesses gave it as their opinion that this growth was probably causing the claimant's trouble, but we find competent evidence in the testimony of other competent witnesses justifying a contrary conclusion. Dr. Nesbitt stated, upon examination, that "the result of the injury has caused him to have these spells." Dr. McKenzie also gave it as his opinion that the claimant's condition was caused by the injury, and stated that he was sure that the "exostosis" did not cause it. Such evidence supports the findings and award as regards the cause of claimant's disability.

Petitioners next contend that the claimant refused to submit to an examination to determine the cause of and the remedy for his disability. They also maintain that the claimant refused to submit to an operation for purposes of diagnosis, or as a remedy for his condition.

The opinions of the medical experts who examined the claimant at various times differ sharply as to the exact cause of claimant's condition, and as to the cure. It is not unreasonable to conclude therefrom that the cause of the condition, and the cure therefor, are problematical. Some of the doctors testify that the removal of this bony growth would effect a complete cure, while others testify that this growth does not in any way contribute to claimant's disability, and that the removal thereof would be of no benefit. Some of the doctors indicate that the removal of this growth would be a very simple operation, while others indicate that it would be a complicated and major operation. Some of the doctors recommend a different type of operation entirely, while it is the opinion of others that an operation at this time would be improper, and that under no circumstances should an operation be performed, except and until claimant had been under careful and continuous observation, possibly in a hospital, for several months. In view of such testimony we must conclude that the Industrial Commission found that an operation was not necessary or advisable at the present time, and this conclusion would be justified therefrom. The facts in this case do not bring the same within the rule announced in Chicago Bridge & Iron Works v. Sabin, 105 Okla. 62, 231 P. 851,

to the effect that an injured workman should submit to such treatment as involves no serious risk or suffering. Clearly, such rule would not require claimant to submit to an unnecessary operation, or an ill-advised operation, and there is competent testimony in this case from which it might be said that no operation should be performed at this time. In Moran v. Oklahoma Engineering & Machine & Boiler Co. et al., 89 Okla. 185, 214 P. 913, it was held:

"Whether or not the refusal of an employee to submit to operation and treatment is unreasonable is a fact which the employer must establish and the Commission must find in order to stop his allowance, and they must find, further, that the treatment would have relieved the trouble, and thus benefited the employer."

Referring to the contention that the claimant refused to submit to the operation, we observe from the record that this contention grows primarily out of claimant's unwillingness at the time of the hearing to submit to an "encephalogram." It appears that claimant has submitted readily to all suggested examinations which did not involve serious danger to this life. During the taking of testimony on claimant's motion to reopen, it was suggested by a witness that the claimant should be examined by Dr. Harry W. Wilkins of Oklahoma City, whom the witness thought to be highly competent in such matters. By agreement the hearing was continued and claimant submitted himself to Dr. Wilkins for examination. After this examination no other doctor testified in the cause except Dr. Wilkins himself. His testimony is to the effect that he did not at that time know whether any kind of operation would effect a cure. He observed claimant some four or five days and recommended the "encephalogram" as a part of his examination, and his testimony rather indicates that he would be unable to advise concerning the cause of claimant's condition, or the cure, until after the "encephalogram" was had; he explained this "encephalogram" as being an injection of air in and around the spinal cord which would then be transmitted to the brain cells and cavities, thus enabling the examiner to determine whether or not claimant's condition was caused by excessive pressure on some portion of the brain. He stated that this process involved some danger of loss of life. At the last hearing before the Commission the claimant refused to submit to that process at the time. In view of the previous testimony of some of the doctors given a short time prior thereto

604

to the effect that they considered it unwise to perform any serious operation on claimant until he had been under continuous observation for several months, and in view of the apparent serious nature of the operation, we are not disposed to disagree with the apparent conclusion of the Commission that an operation or such drastic examination should not be resorted to at the present time without further examination or observations.

In Henly v. Oklahoma Union R. Co. et al., 81 Okla. 224, 197 P. 488, this court held:

"Section 7, Sess. Laws 1919, ch. 14, provides: 'The employer shall promptly provide for an injured employee such medical, surgical, or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus as may be necessary, during 60 days after the injury or for such time in excess thereof as in the judgment of the Commission may be required. If the employer fails to provide the same, the injured employee may do so at the expense of the employer. The employee shall not be entitled to recover any amount expended by him for such treatment or services unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so.' Held, said section is for the benefit of the injured employee, providing for him proper medical and surgical treatment at the expense of the employer in addition to the compensation provided for in said act resulting from injuries arising in the course of his employment; and that under the provisions of section 7, supra, the State Industrial Commission is without jurisdiction to order the injured employee to submit to a major operation involving a risk of life, however slight, in order that the pecuniary obligations created by the law in his favor against his employer may be minimized."

Petitioners also contend that the evidence fails to support the conclusion that claimant is temporarily totally disabled. The claimant testified that he was unable at that time to do manual labor, and some of the doctors testified that he could not, or should not be permitted to work, at least one of them suggesting that he should probably be in a hospital for close observation for several months. Such testimony would justify the Commission's conclusion on that point.

Lastly the petitioners submit the proposition that, the claimant having refused an operation, and refused to submit to that portion of Dr. Wilkins' examination which he recommended, there was no other medical care or attention which could be extended the claimant. This contention is not supported by the record. It is true that Dr. Wilkins recommended a certain thing as a portion of his examination, but an examination by Dr. Wilkins' testimony itself does not indicate that no other medical aid could possibly be extended him unless that be done. Certainly the testimony of the other doctors would indicate that he be under constant observation, possibly in a hospital, for several months. Furthermore, it is reasonable to assume, in view of his condition, and the entire evidence and findings of the various medical examiners, that claimant would likely be in serious need of medical care and attention other than that which was offered and refused.

We find no error in the order and award of the Commission, and the same is therefore affirmed.

McNEILL, C. J., and BAYLESS, BUSBY, and CORN, JJ., concur.