STEELMAN et al. v. JUSTICE et al.

No. 34345.   Feb. 6, 1951.

*227 P. 2d 647.*

George E. Fisher, Oklahoma City, for petitioners.

Mac Q. Williamson, Atty. Gen., and Richard M. Huff, Asst. Atty. Gen., for respondents.

DAVISON, J.   This is a proceeding by W. E. Steelman and his insurance carrier, brought against Earl Eugene Justice, referred to herein as claimant, and the State Industrial Commission to review an order of the commission awarding compensation to claimant.

Claimant was not represented by counsel at the hearing before the commission nor is he so represented in this court. The case is briefed by the Attorney General on behalf of the State Industrial Commission.

The record discloses that claimant on the 14th day of July, 1949, filed his claim for compensation, in which he, in substance, stated that on September 16, 1948, while in the employ of petitioner Steelman he sustained an accidental injury consisting of a broken leg and other external and internal injuries resulting in permanent disability.

The trial commissioner to whom the case was assigned for hearing, in substance, found that claimant, while in the employ of petitioner Steelman, sustained an accidental injury of the nature stated in his complaint, and that such injury arose out of and in the course of his employment consisting of an injury to his right leg below the knee, eyes, pelvis, testicles and internal injuries; that as a result of such injuries he was temporarily totally disabled from the date of the injury, less the five-day waiting period to July 4, 1949, and awarded him compensation for temporary total disability in the sum of $885.50, less the amount of $668.50 theretofore paid claimant, leaving a balance due for such disability in the sum of $217; and in addition thereto the commissioner found that as a result of such injuries claimant sustained a 40 per cent permanent partial disability to and loss of use of the right foot for which he was entitled to compensation in the sum of $1,260; and further found that as a result of the same accident he sustained an injury to his pelvis, testicles and other internal injuries resulting in a 50 per cent permanent partial disability to his body as a whole, and that he was entitled to additional compensation for such injuries in the sum of $6,090, making a total amount which he was entitled to recover for permanent disability the sum of $7,350, and entered an order awarding compensation accordingly.

The award was sustained on appeal to the commission en banc.

Petitioners contend that the award is not sustained by the evidence and is contrary to law. They do not, however, challenge the award insofar as claimant is awarded compensation for the loss of the use of his foot. Neither do they contend that the evidence is insufficient to support the finding as to the other injuries received by claimant or that such injuries together operate to produce the disability as found by the commission. Their contention is that the injuries sustained by claimant other than the injury to his foot operated to produce a diaphragmatic hernia and that compensation for such hernia is limited to 14 weeks and cost of operation as provided by the hernia clause of the statute, 85 O.S. 1941 §22.

The undisputed evidence shows that claimant at the time he sustained his injuries was engaged in greasing a wheeler tractor; that he was working under the tractor; a fellow workman who was working behind him with a bulldozer and in operating the machine ran it over claimant causing him the injuries hereinbefore stated.

The medical testimony tends to show that the greater portion of claimant's disability is due to the injury sustained to his diaphragm which they say resulted in a diaphragmatic hernia; that as a result of such accident or injuries claimant sustained a hole or tear in the diaphragm. The diaphragm was herniated on the left side causing the major one-half of his stomach to come up through the hole and tear and enter into the lung cavity. It was raised up to and past the ribs below the nipple line. This condition they testify causes the greater portion of claimant's disability and that such condition could be considerably reduced by an operation; that such operation could be successfully performed, and while there might be some risk or danger attached to such operation, such risk would be no greater than that of any major operation or the operation for a usual hernia, evidently meaning a femoral, inguinal or umbilical hernia, which constitute the most ordinary and usual hernias. See Blakiston's New Gould Medical Dictionary (1st Ed., 1949) pp. 458-459.

The evidence shows that petitioners tendered claimant an operation and that it was refused. Claimant testified that he refused the operation on the ground that there was some risk or danger of the loss of his life incident thereto and that in the absence of assurance that it would relieve him of the injury to his diaphragm he could not consent to

the operation and that such assurance was not given him.

Considering the entire evidence and the surrounding circumstances, we cannot agree that claimant's right to compensation is limited by the hernia clause of the statute. All of the injuries above mentioned operated together to produce the disability found to exist by the commission. The amount of compensation recoverable is therefore governed by the "other cases" provision of section 22 of the statute, supra, and not by the hernia clause. Transwestern Oil Co. et al. v. Partain, 188 Okla. 97, 106 P. 2d 263.

We do not believe that the Legislature in enacting the hernia statute intended it to apply to injuries such as in the present case, although as a result of the injuries the diaphragm was herniated and torn causing the dislocation of the stomach, and although such injury is defined by medical authority as a diaphragmatic hernia. We think it was the intention of the Legislature that such provision should apply only to the usual and ordinary hernia among which may be included femoral, inguinal and umbilical hernias, and which are evidenced by a protrusion from some part of the abdominal cavity. A hernia such as is here involved would probably be included within the statute should we give to the word hernia its broadest meaning. Should we, however, give the word such meaning compensation for a great many conditions would be limited by the hernia clause of the statute, which it could not be successfully contended were actually intended to be so limited. For instance, an injury to the head which would cause a protrusion of the brain through an acquired opening in the skull, and defined by medical authorities as a cerebral hernia, or an injury to the intervertebral disc which would cause a protrusion of the substance of the disc in the spinal canal, and defined by medical authorities as hernia of the nucleus pulposus, would be included within the statute. It is, however, obvious that compensation for neither of such injuries would be limited by the hernia clause. Lewis v. American Surety Co., 143 Tex. 286, 184 S.W. 2d 137; Royal Indemnity Co. v. Jones (Tex. Civ. App.) 201 S.W. 2d 129, and cases therein cited.

In the case of Pollock v. Clairton School District et al., 100 Pa. Superior Ct. 333, it appears that a workman as the result of injuries suffered a strangulated interabdominal hernia. The court held that compensation for such injury was not governed by the hernia provision of the Workmen's Compensation Act of that state. The court said:

" . . . In a surgical sense, hernia includes not only the protrusion of parts of the viscera from the abdominal cavity but also of any soft interior organ from its normal cavity, as a hernia of the brain, lung or eye, and of course includes an intestinal hernia of the type disclosed by the operation described in this case. But when the use by the Legislature of the word 'hernia' is considered in the light of all the provisions of the amendment, we think it is clear that it did not intend to bring within the scope of the operation of the amendment any hernias other than the ordinary hernias, or 'ruptures,' which gives evidence of their occurrence by a protrusion from some part of the abdominal cavity. . . ."

The rule announced in the above cases we think should also be applied to a diaphragmatic hernia. Such hernia is defined by Blakiston's New Gould Medical Dictionary, supra, as follows:

"One which passes through the diaphragm into the thoracic cavity; may be congenital, acquired, or traumatic, and may contain the stomach, small intestine and colon. Usually a false hernia."

We think the word hernia as used in the above section of the statute should be applied only to the true, ordinary or usual hernia as herein indicated. The commission ruled correctly in not limiting compensation by the hernia clause of the statute.

Since we conclude that the compensation recoverable by claimant is governed by the "other cases" provision

of the statute rather than by the "hernia" provision, under the evidence in this case, the contention of petitioners that claimant should have attempted to minimize the compensation recoverable by submitting to an operation cannot be sustained. K. Lee Williams Theatres, Inc., v. Mickle, 201 Okla. 279, 205 P. 2d 513; City of Tulsa Water Dept. v. Barnes, 170 Okla. 601, 41 P. 2d 809.

Petitioners further contend that the award should be vacated because of the indefiniteness of the findings. We see nothing indefinite or uncertain about the findings. It is apparent from petitioners' brief, however, that their main contention is not that the findings are indefinite and uncertain, but that the commission erred in not concluding from the evidence and findings that the injury sustained by claimant resulted in a diaphragmatic hernia and that compensation for such injury was limited by the hernia clause of the statute. What we have heretofore stated disposes of this question. Petitioners' contention in this respect cannot be sustained.

Petitioners finally contend that there is no competent evidence tending to support the award as to temporary total disability. It is their contention that under the evidence an award for temporary total disability should have been limited to May 3, 1949; that the healing period ended on that date; that the award for temporary total disability from this date up to and until July 14, 1949, is not sustained by the evidence. The testimony of Dr. Waldrop is referred to in support of this contention. Dr. Waldrop testified that claimant was dismissed from an orthopedic point of view on May 2, 1949. He, however, further stated that he saw and treated claimant after that date; that there was then a condition that had not been cleared up and he continued treating him until July 14, 1949, at which time he was dismissed. We think the evidence amply supports the award in this respect.

Award sustained.