1997 ND 154

Gary McDANIEL, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

City of Minot, Respondent and Appellee.

Civil No. 960383.

Supreme Court of North Dakota.

Aug. 11, 1997.

---

Lamont and Skowronek, Shari M. Gianarelli (argued), Minot, for claimant and appellant. John C. Skowronek (on brief).

Brent J. Edison, Special Assistant Attorney General (argued), Bismarck, for appellee North Dakota Workers Compensation Bureau. Tracy Lynn Vignes Kolb, Special Assistant Attorney General (on brief).

Robert J. Slorby (appeared), Eaton, Van de Streek & Ward, Minot, for appellee City of Minot. On brief.

MESCHKE, Justice.

[¶ 1] Gary McDaniel appealed a judgment affirming the Workers Compensation Bureau's denial of benefits for his bladder cancer that he claims was presumptively caused by his work as a firefighter. We reverse and remand for further fact-finding on why substantial medical evidence favorable to McDaniel was ignored, and to apply the correct law of causation.

[¶ 2] McDaniel, a fireman for the City of Minot for over twenty-seven years, fought an average of fifty to one hundred active fires each year. Those fires, he asserts, exposed him to a significant amount of toxic fumes and smoke containing polycyclical aromatic hydrocarbons, carcinogens associated with bladder cancer. McDaniel has also smoked between one-half and two packs of cigarettes a day for over thirty years.

[¶ 3] In November 1992, doctors diagnosed McDaniel with bladder cancer, and he had several surgical operations to remove the cancer. He applied for worker's compensation for his medical treatment.

[¶ 4] The Bureau had Dr. Robert Brownlee perform an independent medical examina-

tion. In his 1993 report, Brownlee concluded McDaniel's smoking more likely caused his cancer: "It would be difficult to separate the exposure from cigarette smoking and the possible exposure from firefighting but I would think in this case that the evidence would lean towards the use of cigarettes being a factor rather than significant exposure in the work place." The Bureau found bladder cancer was not an occupational cancer for firefighters and, even if it was, McDaniel's smoking more likely caused the cancer. The Bureau denied his claim, and McDaniel sought reconsideration.

[¶ 5] In a 1995 deposition, Brownlee testified smokers are twice as likely to get bladder cancer as non-smokers. He was not aware of studies connecting bladder cancer to firefighting, but believed such a relationship was logical: "I would think that it would be common sense to assume that, if you add toxic exposure to the toxins that we understand from cigarette smoke, ... the damage would be greater than for either one by itself." Contrary to his 1993 letter, Brownlee conceded he could not say whether McDaniel's smoking or his job exposures played a more significant role in causing his bladder cancer.

[¶ 6] Dr. Michael McGrail, Jr., testified by deposition to a reasonable degree of medical certainty that bladder cancer is an occupational cancer for firefighters. He relied on several studies and emphasized two that show a three times greater risk of bladder cancer for firefighters. McGrail testified a doctor must evaluate a firefighter's work history to address his level of risk, and concluded McDaniel's smoke exposure from firefighting placed him at risk. McGrail agreed smoking is the greatest risk factor for bladder cancer, but was unable to agree that it more likely caused McDaniel's cancer:

> [W]e could say that the data supports an argument that at least 50 percent of the risk for bladder cancer was occupational. Although this may be true, it is not always applicable to the real world, where malignancies rarely present [themselves] in 50

percent increments. Perhaps a more realistic question is, would the individual have developed the cancer if it were not for the occupational exposure.

McGrail concluded, even with McDaniel's smoking history, his firefighting added to his risk of bladder cancer: "I do not feel that I can say that without the possibility of occupational exposures that Mr. McDaniel would have developed bladder cancer on the basis of his smoking alone."

[¶ 7] Dr. Marc Schenker testified by deposition about the established link between smoking and bladder cancer. He also testified, in his opinion, bladder cancer is not an occupational cancer for firefighters, and he attacked studies connecting firefighting to bladder cancer. With his opinion that firefighting is not an established risk factor for bladder cancer, Schenker believed firefighting would not be a contributing factor to McDaniel's cancer. Even if he accepted the association between bladder cancer and firefighting, Schenker asserted "the risks would be less than two and would not be a more probable than not contributing factor." He concluded "[McDaniel's] bladder cancer is more probably related to his history of cigarette smoking."

[¶ 8] In addition to medical testimony, the hearing officer received into evidence several published studies linking bladder cancer to firefighting. *E.g.*, Tee L. Guidotti, *Occupational Mortality Among Firefighters: Assessing the Association*, 37 J. Occupational & Envtl. Med. 1348, 1354 (1995)(firefighters are twice as likely to die from bladder cancer); Susan R. Sama et al., *Cancer Incidence Among Massachusetts Firefighters, 1982–1986*, 18 Am. J. Indus. Med. 47, 47 (1990)(1.59 times greater risk); John E. Vena & Roger C. Fiedler, *Mortality of a Municipal–Worker Cohort: Fire Fighters*, 11 Am. J. Indus. Med. 671, 671 (1987)(2.86 times greater risk). The hearing officer found bladder cancer to be an occupational cancer for firefighters, raising the presumption that McDaniel's cancer was fairly traceable to his job. Neither McDaniel's employer, nor the

Bureau dispute this finding on appeal, and the evidence clearly supported the presumption that McDaniel's cancer was fairly traceable to his job.

[¶ 9] However, the hearing officer found that the Bureau had rebutted the presumption, and that smoking more likely caused the cancer:

> By the greater weight of the evidence, the Bureau has effectively rebutted [McDaniel's] contention of entitlement by reason of the presumption clause. Testimony revealed that polyairomatic hydrocarbons and other carcinogens are evident in cigarette smoke and cigarette smoking is a known cause of bladder cancer. Dr. Brownlee states that [McDaniel's] bladder cancer was more probably attributable to heavy cigarette exposure as opposed to occupational smoke and fumes.

> > "A consistent relationship has been demonstrated between cigarette smoking and bladder cancer, and the rate of bladder cancer is twice as high in people who smoke as in people who do not smoke." ([Dr. Brownlee's testimony], pg.14).

> > "... he ([McDaniel]) is more likely to develop bladder cancer because of exposure to cigarette smoke." ([Dr. Brownlee's testimony], pg.17).

> > "My opinion is that his ([McDaniel's]) bladder cancer is more probably related to his history of cigarette smoking." ([Dr. Schenker's testimony], pg.19).

> See, also, Exhibits B5 and B14 as demonstrating the link between cigarette exposure and [McDaniel's] bladder cancer.

The hearing officer recommended denial of McDaniel's claim, and the Bureau adopted this recommendation. McDaniel appealed. The district court summarily affirmed the Bureau, and McDaniel appealed to this Court.

[¶ 10] McDaniel argues the hearing officer erred in finding the Bureau rebutted the presumption that traced his cancer to his firefighting work. He asserts the Bureau had the dual burden of showing that a non-work condition caused his cancer and that it was the more likely cause. McDaniel argues the hearing officer only required the Bureau to show a non-work-related condition contributed to his cancer to conclude the Bureau had rebutted the presumption. He argues the hearing officer erred in relying on experts who did not consider firefighting to be a cause of bladder cancer, and in failing to explain why it disregarded expert testimony linking bladder cancer to firefighting. McDaniel urges that the occupational cancer presumption relieves him of the impossible burden of proving the exact cause of his cancer.

[¶ 11] Appellate review of a Bureau decision to deny benefits is governed by NDCC 28–32–19. *Burrows v. North Dakota Workers' Comp. Bureau*, 510 N.W.2d 617, 618 (N.D.1994). We review the record and decision of the Bureau rather than the district court's decision. *Sunderland v. North Dakota Workmen's Comp. Bureau*, 370 N.W.2d 549, 552 (N.D.1985). We affirm the Bureau decision if a preponderance of the evidence supports the Bureau's findings of fact, its findings of fact support its conclusions of law, its conclusions of law support its decision, and its decision is in accordance with the law. *Spangler v. North Dakota Workers Comp. Bureau*, 519 N.W.2d 576, 577 (N.D.1994). Here, we disagree with the Bureau's application of the workers' compensation law on causation.

[¶ 12] A compensable injury includes any disease fairly traceable to the worker's employment. NDCC 65–01–02(9)(a)(1). A disease is fairly traceable to employment if there is a direct causal connection between work conditions and the disease. NDCC 65–01–02(18)(a). A worker's employment need not be the sole cause of the disease, and it is sufficient if a work condition is a substantial contributing factor to the disease. *Christianson v. North Dakota Workers Comp. Bureau*, 470 N.W.2d 613, 615 (N.D.1991); *Syverson v. North Dakota Workmen's Comp. Bureau*, 406 N.W.2d 688,

690 (N.D.1987). As we explained in *Satrom v. North Dakota Workmen's Comp. Bureau,* 328 N.W.2d 824, 831 (N.D.1982), just because personal habits make a worker more prone to certain injuries does not mean the Bureau can deny a claim when the evidence indicates with reasonable medical certainty that work conditions are causally connected to the particular injury.

■ [¶ 13] The Workers Compensation Act creates a presumption that certain cancers related to firefighting are fairly traceable to that work:

> However, any condition or impairment of health of a full-time paid firefighter ... caused by ... occupational cancer in a full-time paid firefighter, resulting in total or partial disability or death is presumed to have been suffered in the line of duty. The condition or impairment of health may not be attributed to any disease existing before that total or partial disability or death unless the contrary is shown by competent evidence. As used in this subdivision, an occupational cancer is one which arises out of employment as a full-time paid firefighter and is due to injury due to exposure to smoke, fumes, or carcinogenic, poisonous, toxic, or chemical substances while in the performance of active duty as a full-time paid firefighter....

NDCC 65–01–02(18)(d). As we explained in *Flermoen v. North Dakota Workers Comp. Bureau,* 470 N.W.2d 220, 222 (N.D.1991), the presumption's purpose is to relieve firemen of the nearly impossible burden of proving that firefighting actually caused their cancer.[1]

■■ [¶ 14] The occupational-cancer presumption shifts the burden of proof from the firefighter to the Bureau. *Sunderland,* 370 N.W.2d at 552. "[T]he party against whom the presumption is directed bears the burden of proving that the nonexistence of the presumed fact is more probable than its existence." *Id.* When multiple factors have contributed to causation, the Bureau must do more to carry its burden than show one was the more likely cause for a firefighter's cancer; it must prove that, more likely, firefighting.was not a significant contributing factor to the injury by disease.[2] *Christianson,* 470 N.W.2d at 615. Dr. McGrail posed the correct factual question: "[W]ould the individual have developed the cancer if it were not for the occupational exposure?" If the Bureau did not need to answer this question, the statutory presumption would be ineffectual, and firefighters would still have the impossible burden of showing that firefighting was the sole cause of their cancer.

[¶ 15] Our conclusion, we believe, is consistent with *Burrows* where we affirmed the Bureau's decision that medical evidence overcame the presumption that a police officer's work caused his lung cancer. 510 N.W.2d at 619. In *Burrows,* the Bureau submitted medical evidence that Burrow's life-long smoking habit caused his lung cancer, there was no evidence of exposure to cancer-causing agents on the job, and there was no evidence showing a risk of lung cancer from police work. *Id.* Here, McDaniel submitted ample evidence of an increased risk of blad-

---

1. In 1995, the legislature added NDCC 65–01–15 to confine the occupational-cancer presumption to non-smokers:

   [A] full-time paid firefighter or law enforcement officer who uses tobacco is not eligible for the benefits provided under subdivision d of subsection 18 of section 65–01–02 unless the full-time paid firefighter or law enforcement officer provides yearly documentation from a physician which indicates that the full-time paid firefighter or law enforcement officer has not used tobacco for the preceding two years. Any full-time paid firefighter or law enforcement officer employed on June 30, 1995, is not subject to this section until July 1, 1997.

1995 N.D. Laws ch. 610, § 2. Because McDaniel filed his claim before July 1, 1997, this new limitation does not apply to him.

2. *McAllister v. Workmen's Comp. Appeals Bd.,* 69 Cal.2d 408, 71 Cal.Rptr. 697, 703, 445 P.2d 313, 319 (1968)("Although decedent's smoking may have been inadvisable, respondents offer no reason to believe that the likelihood of contracting lung cancer from the smoking was so great that the danger could not have been materially increased by exposure to the smoke produced by burning buildings.").

der cancer for firemen and of his firefighting exposure to enough carcinogens to put him at risk.

[¶ 16] We conclude the hearing officer did not apply the correct law of causation in this case. The hearing officer found smoking was the more likely cause of McDaniel's cancer, but did not find whether or not his firefighting was a substantial contributing cause of the cancer. We remand this case to the agency for the hearing officer to make that finding. We also remand because there are problems with other aspects of the hearing officer's decision.

[¶ 17] The adversarial concept has only limited application in a worker's compensation claim. *Syverson,* 406 N.W.2d at 690. The Bureau must consider the entire medical record and adequately explain its reason for disregarding medical evidence favorable to the claimant. *Siewert v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 465, 470 (N.D.1996); *Claim of Murray,* 431 N.W.2d 651, 654 (N.D.1988). As *Spangler,* 519 N.W.2d at 579, illustrates too, the Bureau must adequately explain inconsistent statements from the same medical expert.

[¶ 18] Here, the hearing officer relied primarily on Brownlee's statement in his 1993 letter that smoking more likely caused McDaniel's bladder cancer. Brownlee's 1995 testimony, however, compromised this statement when he admitted he could not say whether firefighting or smoking played a more significant role. The hearing officer failed to address this discrepancy. Also, the hearing officer relied on evidence linking smoking to bladder cancer, but did not explain why he disregarded evidence showing the increased risk for firefighters.

[¶ 19] Finally, we are puzzled by the hearing officer's reliance on Schenker's testimony that McDaniel's smoking more likely caused his bladder cancer. Schenker based his opinion on the assumption that firefighting was not a contributing risk factor to bladder cancer, while the hearing officer clearly re-

jected this assumption in finding that "bladder cancer is a recognized occupation cancer of firefighters."

[¶ 20] We reverse and remand for further fact-finding. The hearing officer must explain why he ignored Dr. Brownlee's inconsistent statements and the evidence linking firefighting to bladder cancer. The hearing officer must clarify whether or not firefighting was an insignificant contributing cause to McDaniel's bladder cancer and, if so, satisfactorily explain why.

[¶ 21] VANDE WALLE, C.J., and MARING and SANDSTROM, JJ., concur.

[¶ 22] MAURICE R. HUNKE, District Judge, sitting in place of NEUMANN, J., disqualified.

HUNKE, District Judge, concurring.

[¶ 23] Justice Meschke's scholarly opinion correctly reaffirms that the ultimate question of whether the statutory presumption in NDCC 65–01–02(18)(d) has been rebutted is one of fact to be determined by the hearing officer or the administrative agency involved, as the case may be. *Burrows v. North Dakota Workers' Comp. Bureau,* 510 N.W.2d 617 (N.D.1994); *Flermoen v. North Dakota Workers Comp. Bureau,* 470 N.W.2d 220 (N.D.1991); *Sunderland v. North Dakota Workmen's Comp. Bureau,* 370 N.W.2d 549 (N.D.1985). If the fact-finder's decision is supported by a preponderance of the evidence, the order of the agency must be affirmed by both the district court and the supreme court. NDCC 28–32–19(5) and 28–32–21. I believe there is sufficient evidence in the record to sustain the hearing officer's finding that the presumption has been rebutted.

[¶ 24] The reversal and remand proposed by Justice Meschke does not disturb those basic premises but only requires the hearing officer to employ certain procedural mechanisms in the fact-finding process to "explain" and "clarify" the ultimate decision of whether the statutory presumption prevails or has

been overcome. Accordingly, I concur in the reversal and remand for that purpose.

[¶ 25] Maurice R. Hunke, District Judge.