1998 ND 139

Darold B. SHIEK, Claimant
and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee,

and

North Dakota State University,
Respondent.

Civil No. 970333.

Supreme Court of North Dakota.

July 16, 1998.

Mark G. Schneider (argued) and Steven C. Schneider (appearance), of Schneider, Schneider & Schneider, Fargo, for claimant and appellant.

Andrew L.B. Noah (argued), Special Assistant Attorney General, Fargo, for appellee.

NEUMANN, Justice.

[¶ 1] Darold B. Shiek appealed from a judgment affirming a Workers Compensation Bureau order denying his claim for disability benefits. We conclude the Bureau misapplied the retirement presumption law under N.D.C.C. § 65–05–09.3 in considering Shiek's claim. We reverse the judgment and remand to the Bureau for the admission of any necessary evidence, and the preparation of findings necessary to properly adjudicate Shiek's claim for benefits.

I

[¶ 2] On July 30, 1991, Shiek injured his right shoulder while working as a boiler operator at North Dakota State University (NDSU). Shiek was 60 years old at the time. He filed a claim with the Bureau on August 2, 1991, and the Bureau accepted liability. Shiek had surgery on his right shoulder, did not work from July 31, 1991 through March 2, 1992, and received disability benefits for that time period.

[¶ 3] Shiek's surgeon, Dr. Charles Hartz, released Shiek to return to work "with restrictions on lifting and overhead work, that is to make it light duty for the right arm." NDSU accommodated these restrictions, and Shiek returned to work in a modified light duty position on March 3, 1992. In April 1992, Shiek told Hartz his only problem at work related to painting, which required him "to reach up as high as he can." Hartz recommended Shiek "work at waist level or below," and NDSU accommodated this restriction and modified Shiek's light duty cleaner/painter position.

[¶ 4] On August 22, 1992, Shiek filed a separate claim for injury with the Bureau regarding his left knee. Shiek explained the injury to his left knee occurred when he injured his right shoulder on July 30, 1991, but his knee "didn't get bad for about 4 or 5 months...." The Bureau consolidated the claim for the left knee injury with the original claim for the right shoulder injury. Shiek had missed work from August 4, 1992, when Dr. David Humphrey operated on his left knee, through August 16, 1992. Humphrey, who examined Shiek's knee on August 10, 1992, told Shiek he could go back to work "in one week with advice that it be light work and no ladder climbing, etc." Shiek received disability benefits from the Bureau for the August 4 through August 16, 1992 period.

[¶ 5] When Shiek returned to work on August 17, 1992, he submitted his voluntary resignation to NDSU effective September 25, 1992, Shiek's 62nd birthday. Shiek worked from August 17, 1992 until August 31, 1992, when Humphrey took him off of work through September 3, 1992, because of swelling in his knee. Shiek saw Humphrey again on September 21, 1992, and Humphrey advised him to keep off of work for the rest of the week. Shiek did not return to work that week, and in accordance with his earlier plans, retired from NDSU on September 25, 1992. NDSU never modified Shiek's work to accommodate his left knee injury. Shiek received disability benefits for the work he missed through September 3, 1992, because of his left knee injury.

[¶ 6] Shiek asked the Bureau for further lost time disability benefits in connection with his claim. On January 10, 1995, the Bureau issued an order denying further benefits, concluding Shiek voluntarily retired from the work force on September 25, 1992, and therefore was not entitled to any further disability benefits under N.D.C.C. § 65–05–09.3. Shiek requested reconsideration and received a formal administrative hearing. The Administrative Law Judge (ALJ) issued recommended findings of fact and conclusions of law affirming the Bureau's January 10, 1995 order.

[¶ 7] The ALJ found Shiek "regularly made it known to his fellow employees at the heating plant at [NDSU], at least as far back as 1990, and prior to a work-related injury he experienced on July 30, 1991, that he was going to retire at age sixty-two." The ALJ found Shiek "voluntarily withdrew from the labor force and retired from the labor market effective September 25, 1992, the date of his sixty-second birthday anniversary, in accordance with plans made years before to retire upon reaching age sixty-two, and not because of his work-related injury." The ALJ concluded:

> "Darold Shiek is not entitled to either temporary total disability benefits or permanent total disability benefits calculated pursuant to N.D.C.C. § 65–05–09

September 25, 1992, as those benefits are premised on a theory of wage replacement, and are, thus, intended to compensate an injured employee for lost wages. Because Mr. Shiek voluntarily withdrew from the labor market as of September 25, 1992 in accordance with his planned retirement, he surrendered his capacity to earn, and, conversely, to lose, wages, at least until such time as he might re-enter the labor market, with the result that he can claim no lost wages subsequent to that date for which he is entitled to compensation."

[¶ 8] The Bureau issued an order adopting the ALJ's recommended findings and conclusions, and Shiek appealed to district court. The district court affirmed the Bureau's order, and this appeal followed.

II

[¶ 9] On appeal, we review the Bureau's decision, not the district court's decision, but in our deliberations we consider the district court's analysis and reasoning. *See Ekstrom v. North Dakota Workers Compensation Bureau*, 478 N.W.2d 380, 382 (N.D. 1991). We affirm unless the findings of fact are not supported by a preponderance of the evidence, the conclusions of law are not supported by the findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violated the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. *See Sprunk v. North Dakota Workers Compensation Bureau*, 1998 ND 93, ¶ 4, 576 N.W.2d 861; N.D.C.C. §§ 28–32–19 and 28–32–21. Our review of the Bureau's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *See Feist v. North Dakota Workers Compensation Bureau*, 1997 ND 177, ¶ 8, 569 N.W.2d 1.

[¶ 10] When a claimant reapplies for disability benefits after their discontinuance, N.D.C.C. § 65–05–08(2) (1995)[1] directed

---

1. N.D.C.C. § 65–05–08(2) (1995) was amended and reenacted by the 1997 Legislature. *See* 1997 N.D. Sess. Laws Ch. 542, § 1. A similar provision is now codified at N.D.C.C. § 65–05–08(1).

those benefits "must be reinstated upon a finding that:"

"a. The employee has sustained a significant change in medical condition shown by a preponderance of the evidence;

"b. The employee has provided evidence of actual wage loss attributable to the work injury; and

"c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3."

[¶ 11] A "retirement presumption" is codified at N.D.C.C. § 65–05–09.3 (1993),[2] and provided at the pertinent time:

"An employee who has retired or voluntarily withdrawn from the labor force is presumed retired from the labor market and is ineligible for receipt of disability benefits under this title. The presumption may be rebutted by a preponderance of the evidence that the worker:

"1. Is actively seeking employment;

"2. Is available for gainful employment;

"3. Has not rejected any job offer made by a former employer, or other bona fide job offer by another employer; and

"4. Has not provided the employer, upon written request, with written notice of a scheduled retirement date.

"The presumption does not apply to any employee who is permanently and totally disabled as defined under this title."

[¶ 12] The ALJ had difficulty interpreting the retirement presumption statute. In the ALJ's recommended findings and conclusions, which were adopted in total by the Bureau, the ALJ acknowledged the statutory language providing the retirement presumption " 'does not apply to an[y] employee who is permanently and totally disabled,' " but opined "[t]he intent of this exclusion is difficult to discern" and the language "[o]n its face . . . is somewhat nonsensical." The ALJ then went on to attempt to define the "possible intended meaning" the Legislature had for this exclusion.

[¶ 13] The ALJ speculated the language was "[p]erhaps . . . intended to mean that the Bureau cannot, where an employee has retired, prorate, to the date of retirement, the amount of any lump sum permanent impairment award calculated pursuant to N.D.C.C. § 65–05–12. . . ." The ALJ also speculated:

"Another possible intended meaning is that in calculating disability benefits based on lost wages under N.D.C.C. § 65–05–09, there is to be no presumption that a permanently and totally disabled employee who 'retires' has voluntarily removed himself from the labor market, and so if such lost wage benefits are to be terminated because the employee is no longer working, the voluntariness of such 'retirement' must be established by substantive evidence."

[¶ 14] The ALJ concluded the Legislature "must have . . . intended" this latter "possible intended meaning" of the statute, found Shiek had voluntarily terminated his employment on September 25, 1992, "and thus became ineligible for disability benefits premised on lost wages . . . after that date."

[¶ 15] The ALJ appeared to conclude whether Shiek was permanently and totally disabled was irrelevant to its decision. The ALJ reasoned, "[b]ecause I find that Shiek's termination of employment was voluntary and pursuant to his long-standing retirement plans and not because of the effects of his work-related injury, I do not find it necessary to address whether Shiek's functional limitations could or could not have been accommodated by any modified position NDSU

2. N.D.C.C. § 65–05–09.3 (1993) was amended by the Legislature in 1995 and 1997. The 1995 amendment to the statute applies to persons who retire or become eligible for social security or other retirement benefits after July 31, 1995. See 1995 N.D. Sess. Laws Ch. 623, § 1. The 1997 amendment was declared to be retroactive to August 1, 1995, and was approved as an emergency measure effective March 13, 1997. See N.D. Sess. Laws Ch. 543, §§ 2, 3 and 4. The substance of the 1995 and 1997 amendments is detailed in Gregory v. North Dakota Workers Compensation Bureau, 1998 ND 94, ¶¶ 18–20, 578 N.W.2d 101. Because the parties have not raised any issues about the possible effects of the amendments on Shiek's claim for benefits, see Gregory, 1998 ND 94, ¶¶ 26–33, 578 N.W.2d 101, we confine ourselves to the pre–1995 version of N.D.C.C. § 65–05–09.3.

might have offered him." The ALJ also said, "if an employee voluntarily withdraws from the labor market as the result of a planned retirement, that employee would have no contemplated employment, thus, no wages, after the date of such retirement, and so cannot qualify for compensation for lost wages after that date, whether the associated disability be characterized as temporary total or permanent total." There is no clear finding whether Shiek was permanently and totally disabled.

[¶ 16] Interpretation of a statute is a question of law fully reviewable by this Court. *Jensen v. North Dakota Workers Compensation Bureau*, 1997 ND 107, ¶ 9, 563 N.W.2d 112. The primary objective of statutory construction is to ascertain the intent of the Legislature. *Effertz v. North Dakota Workers' Compensation Bureau*, 481 N.W.2d 218, 220 (N.D.1992). However, we look first in ascertaining legislative intent at the words used in the statute, giving the words their ordinary, plain language meaning. *Raboin v. North Dakota Workers Compensation Bureau*, 1997 ND 221, ¶ 17, 571 N.W.2d 833. Normally we will defer to a reasonable interpretation of a statute by the agency enforcing it when that interpretation does not contradict clear and unambiguous statutory language. *Lende v. North Dakota Workers Compensation Bureau*, 1997 ND 178, ¶ 12, 568 N.W.2d 755. However, an interpretation that does contradict clear and unambiguous statutory language cannot be called reasonable.

[¶ 17] The meaning of the retirement presumption statute is clear and unambiguous on its face. As expressed by the statute, and as we pointed out in *Kallhoff v. North Dakota Workers' Compensation Bureau*, 484 N.W.2d 510, 514 (N.D.1992), there is no statutory presumption of retirement for "any employee who is permanently and totally disabled as defined in [Title 65]." The ALJ's tortuous construction of the statute eviscerates the clear exclusion of permanently and totally disabled employees from operation of the presumption. It is true statutes should be interpreted to avoid absurd and ludicrous results, *Ohnstad Twichell, P.C. v. Treitline*, 1998 ND 10, ¶ 20, 574 N.W.2d 194,

but excluding permanently and totally disabled employees from operation of the presumption is neither absurd nor ludicrous. We have recognized the right of a permanently and totally disabled employee to have disability benefits "continue into retirement years is built into the very idea of workmen's compensation as a self-sufficient social insurance mechanism." *Gregory v. North Dakota Workers Compensation Bureau*, 1998 ND 94, ¶ 18 n. 5, 578 N.W.2d 101 (quoting 5 Larson, *Workers' Compensation Law* § 60.21(f) (1997)). The ALJ and the Bureau erred as a matter of law in ruling whether Shiek was permanently and totally disabled was irrelevant to the application of the retirement presumption statute.

### III

[¶ 18] The Bureau asserts its decision is sustainable because Shiek nevertheless failed to establish his permanent and total disability. The Bureau argues it established Shiek retired or voluntarily withdrew from the labor force, so the retirement presumption applies unless Shiek establishes he was permanently and totally disabled under Title 65. Shiek argues the Bureau is not entitled to the benefit of the presumption that he retired from the labor market and is ineligible for disability benefits because it has not satisfied the threshold requirement of showing facts giving rise to the presumption, *i.e.*, that Shiek is not permanently and totally disabled.

[¶ 19] A claimant has the burden of proving by a preponderance of the evidence he or she is entitled to workers compensation benefits. *Feist*, 1997 ND 177, ¶ 5, 569 N.W.2d 1; N.D.C.C. § 65–01–11. We have also recognized the claimant has the burden of proving his or her right to continue receiving benefits. *See Frohlich v. North Dakota Workers Compensation Bureau*, 556 N.W.2d 297, 301 (N.D.1996). While the occupational-cancer presumption under former N.D.C.C. § 65–01–02(18)(d)(1995), presently codified at N.D.C.C. § 65–01–15.1 (1997), presumes a firefighter or law enforcement officer's occupational cancer was suffered in the line of duty and shifts the burden of proof from the claimant to the Bureau, *see, e.g., McDaniel v.*

*North Dakota Workers Compensation Bureau,* 1997 ND 154, ¶ 14, 567 N.W.2d 833; *Burrows v. North Dakota Workers' Compensation Bureau,* 510 N.W.2d 617, 618–619 (N.D.1994), we have recognized this is a "limited exception to th[e] general rule." *Flermoen v. North Dakota Workers Compensation Bureau,* 470 N.W.2d 220, 221 (N.D. 1991).

[¶ 20] N.D.C.C. § 65–05–09.3 (1993) states an employee who "has retired or voluntarily withdrawn from the labor force is presumed retired from the labor market and is ineligible for receipt of disability benefits under this title." The statute specifies how the presumption may be rebutted and provides the presumption "does not apply to any employee who is permanently and totally disabled as defined under this title."

[¶ 21] We reject Shiek's argument the retirement presumption statute shifts the burden of proof to the Bureau to establish Shiek is not permanently and totally disabled as one of the threshold factual requirements giving rise to the presumption. It would be illogical to require a claimant to prove he or she is totally disabled in order to qualify for benefits for temporary total or permanent total disability under N.D.C.C. § 65–05–09, rather than partial disability under N.D.C.C. § 65–05–10, but not to have to prove total disability for purposes of N.D.C.C. § 65–05–09.3 (1993). We conclude once the claimant has established by a preponderance of the evidence that he or she is totally and permanently disabled, the Bureau must prove, without the aid of a presumption, the claimant is retired from the labor market. In other words, if the claimant demonstrates he or she is permanently and totally disabled, the burden shifts to the Bureau to prove the claimant is not permanently and totally disabled or that the claimant retired from the labor market voluntarily, rather than having been forced from that market by the disability, if the Bureau seeks to hold the claimant ineligible for further benefits. The claimant must still establish his or her disability, as any claimant must do, to qualify for benefits.

[¶ 22] The Bureau's finding that Shiek voluntarily retired on September 25, 1992, in accordance with his long-standing plan to retire is supported by a preponderance of the evidence. Shiek told fellow employees years before his retirement date that he planned to retire when he turned 62 years old. He had notations in his log book and a calendar at work counting down the days left until retirement. Shiek told vocational consultants of his planned retirement. A reasoning mind reasonably could have determined from this evidence that Shiek's retirement was voluntary.

[¶ 23] That finding, however, does not give rise to a presumption of retirement from the labor market under N.D.C.C. § 65–05–09.3 (1993) if Shiek is permanently and totally disabled. What is missing from the Bureau's findings in this case is a clear determination whether Shiek in fact was permanently and totally disabled as defined in Title 65. We cannot accept the Bureau's assertion that the ALJ "squarely determined" Shiek was not permanently and totally disabled. Although the ALJ broaches the issue in some parts of his decision by referring to insufficient evidence showing Shiek could not have performed his job duties associated with his modified work position, we cannot elevate this statement to a finding of permanent and total disability under the Workers Compensation Act. Permanent total disability encompasses not only medical limitations, but also a worker's age, education, work history and vocational rehabilitation potential. *See* N.D.C.C. § 65–01–02(12) (1991). Moreover, given the ALJ's apparent legal conclusion that whether Shiek was permanently or totally disabled was irrelevant, we decline to imply a finding on the issue.

[¶ 24] Nor can we decide the issue on the record as a matter of law. To support its argument of no disability the Bureau relies on the absence of any medical opinion that Shiek was permanently and totally disabled on September 25, 1992. The Bureau particularly emphasizes Humphrey's response to a letter from Shiek's counsel inquiring about Shiek's ability to work in September 1992. Humphrey said "I have never restricted him from work on a long term basis." However, Shiek relies on a later letter from Humphrey to a rehabilitation specialist stating "I have no interest in trying to guess for you what

Mr. Shiek's capacities are or could have been at any specific point in time," thus implying a lack of knowledge of whether Shiek was permanently and totally disabled. In support of Shiek's argument he was disabled, Shiek relies on his qualifying for Social Security disability benefits effective September 1992, his undergoing "total knee" replacement surgery, NDSU's failure to modify his physical job requirements to match the limitations imposed by the knee injury, and a rehabilitation consultant's testimony about "adverse vocational factors" in Shiek's case.

[¶ 25] This Court is in no position to make independent findings of fact from a Bureau record. *See Theige v. North Dakota Workers Compensation Bureau*, 1997 ND 160, ¶ 7, 567 N.W.2d 334. On this record, reasoning minds could disagree on whether Shiek was permanently and totally disabled under the requirements of the Workers Compensation Act.

[¶ 26] Accordingly, we reverse the judgment and remand to the Bureau for the proper application of the retirement presumption law, the admission of any necessary evidence, and the preparation of findings necessary to properly adjudicate Shiek's claim for benefits.

[¶ 27] VANDE WALLE, C.J., and SANDSTROM, MESCHKE and MARING, JJ., concur.

