1998 ND 146

Nadira ALI, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee,

and

Fargo Assembly Company, Respondent
and Appellee.

Civil No. 970318.

Supreme Court of North Dakota.

Aug. 18, 1998.

Steven C. Schneider (argued) and Mark G. Schneider (appearance), of Schneider, Schneider & Schneider, Fargo, for claimant and appellant.

Leo F.J. Wilking (argued), Special Assistant Attorney General, Fargo, for appellee Workers Compensation Bureau.

Pamela J. Hermes (argued), of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for respondent and appellee Fargo Assembly Company.

MESCHKE, Justice.

[¶ 1] Nadira Ali appealed a district court judgment affirming the North Dakota Workers Compensation Bureau's order suspending her disability benefits. We reverse and remand for entry of judgment reinstating Ali's benefits.

[¶ 2] Ali worked at Fargo Assembly Company assembling electronic wire harnesses. She began having pain in her right arm, and was first diagnosed with "repetitive over use tendinitis" by Dr. Wolff in 1994. She filed a claim for benefits in May 1994, and the Bureau accepted the claim and paid benefits. Ali's condition worsened and she had more difficulties with her upper extremities on both sides, requiring modification of her work duties. By October 1994 she was unable to work and receiving disability benefits. In January 1995 Dr. Wolff concluded Ali had "chronic myofascial pain syndrome." Dr. Wolff recommended vocational rehabilitation, but specifically recommended a pain management program for Ali before she attempted a functional capacity evaluation (FCE). Dr. Wolff and other physicians later recommended numerous times that Ali be sent to a pain management program.

[¶ 3] The Bureau refused to authorize a pain program for Ali, and instead directed her to submit to an FCE on January 11–12, 1995. The therapist who conducted the FCE, Renae Troyer, determined the FCE was invalid because Ali was unable to perform many of the tests because she "was limited by her reports of pain." Troyer did indicate, however, that Ali was cooperative and "was willing to attempt all tasks." Troy-

er too recommended Ali participate in a pain program.

[¶ 4] The Bureau again ignored the recommendation of a pain program and scheduled Ali for a second FCE on March 23–24, 1995. When Ali's performance on the first day of the test was similar to the first FCE, the therapist conducting the second FCE contacted the Bureau to see if he should go ahead with the second day of testing. The Bureau canceled the second day of testing. In his report, the second therapist also recommended referral to a pain program.

[¶ 5] On April 11, 1995, the Bureau issued a notice of intention to discontinue Ali's disability benefits for her failure to cooperate and give full participation on the second FCE. The Bureau issued an order suspending Ali's benefits on May 12, 1995. Dr. Wolff responded with a letter again urging a pain management program for Ali.

[¶ 6] The Bureau instead scheduled a third FCE for Ali on July 13–14, 1995. The results were similar to the first two evaluations, and the therapist again recommended that Ali participate in a pain program. The therapist indicated Ali was cooperative but failed to work to her maximum level because of complaints of pain.

[¶ 7] Ali timely petitioned for reconsideration of the Bureau's May 12, 1995 order, and a hearing was held on May 23, 1996. The administrative law judge (ALJ) issued his recommended findings of fact, conclusions of law, and order on July 16, 1996, finding Ali had not intentionally obstructed the FCE, but had refused to reasonably participate in the FCE. The ALJ found it unnecessary to determine whether Ali's pain was "real or imagined," but recommended the Bureau consider a pain program for her. The ALJ recommended suspension of Ali's benefits under NDCC 65–05–28(4) for refusing to reasonably participate in the FCE. The Bureau adopted the ALJ's recommended findings, conclusions, and order and suspended Ali's disability benefits.

[¶ 8] Ali appealed to the district court. That court affirmed the Bureau's order. Ali then appealed to this Court.

[¶ 9] We review the record and decision of the Bureau rather than the district court's decision. *McDaniel v. North Dakota Workers Compensation Bureau*, 1997 ND 154, ¶ 11, 567 N.W.2d 833. As we explained in *Loberg v. North Dakota Workers Compensation Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221, under NDCC 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the appellant's constitutional rights, or the Bureau's rules or procedures deprived the appellant of a fair hearing.

[¶ 10] The Bureau relied exclusively upon NDCC 65–05–28(4) to suspend Ali's benefits. That statute directs:

> If an employee, or the employee's representative, refuses to submit to, or in any way intentionally obstructs, any examination, or refuses reasonably to participate in medical or other treatments, the employee's right to claim compensation under this title is suspended until the refusal or obstruction ceases. No compensation is payable while the refusal or obstruction continues, and the period of the refusal or obstruction must be deducted from the period for which compensation is payable to the employee.

As *Gregory v. North Dakota Workers Compensation Bureau*, 1998 ND 94, ¶ 26, 578 N.W.2d 101, explains, interpretation of a statute is a question of law fully reviewable on appeal. The critical question in this case is whether there is a distinction between an "examination" and a "treatment" in the statute.

[¶ 11] This statute designates two different instances when a worker's benefits may be suspended: (1) if the employee refuses to submit to, or intentionally obstructs, an "examination;" or (2) if the employee unreasonably refuses to participate in "treatment." The Bureau argues there is no real difference between the two, and an injured worker has the same duty of cooperation whether an FCE is an "examination" or a "treatment." Alternatively, the Bureau argues an FCE is

in the nature of treatment, and the Bureau could therefore suspend benefits if Ali refused to reasonably participate in the FCE. The distinction is critical in this case because the Bureau specifically found Ali did not intentionally obstruct the FCE, but only refused to reasonably participate.

[¶ 12] A statute should be construed to give effect to each word and phrase. *See, e.g., Medcenter One, Inc. v. North Dakota State Board of Pharmacy*, 1997 ND 54, ¶ 13, 561 N.W.2d 634. All parts of a statute must be construed to have meaning because the law neither does nor requires idle acts. *County of Stutsman v. State Historical Society*, 371 N.W.2d 321, 325 (N.D. 1985); NDCC 31–11–05(23). We therefore construe NDCC 65–05–28(4) with the view the legislature intended different meanings for the different words used, "examination" and "treatment."

[¶ 13] We believe there is a logical basis for construing the two terms differently. The Bureau may require the injured employee to submit fully to an "examination" to determine his ability to return to work or to review his diagnosis and prognosis. *See, e.g.,* NDCC 65–05–28(3) and 65–05.1–04(3). The injured employee has some control, however, over the course of his medical "treatment." The employee must comply with "reasonable" requests while under medical care and must follow the directives of his treating doctor, *see* NDCC 65–05–28, but, when faced with a choice between reasonable alternative treatments for his condition, the employee may make the choice and the Bureau cannot totally direct one course of treatment over another. *See* 1 Arthur Larson, Workers' Compensation Law § 13.22(e) (1998). Thus, for example, if an injured employee is presented with the possibility of surgery, but the surgery carries with it attendant risks, the employee may refuse the surgery if it is reasonable to do so. *See* 1 Larson at § 13.22(f). Professor Larson explains the reason:

> The surgeon who sees several operations every day and who testifies that the chance of fatality is only five percent naturally has a different point of view than the claimant

who has never had a major operation and might quite understandably prefer to enjoy life as best he or she can with the injury rather than take a one-in-twenty chance of being dead. In the words of the Oklahoma court:

> The State Industrial Commission is without jurisdiction to order the employee to submit to a major operation involving a risk of life, however slight, merely in order that the pecuniary obligations created by the law in his favor against his employer may be minimized.

1 Larson § 13.22(f) at p. 3–794 (footnote omitted) (quoting *Steelman v. Justice*, 204 Okla. 117, 227 P.2d 647, 648 Syll. ¶ 2 (1951)). An injured worker should have reasonable discretion in participating in any medical treatment that creates other risks to his health.

[¶ 14] It is precisely this element of discretion in selecting the course of his own medical treatment that explains the differing standards for a Bureau-ordered "examination" and for the employee's medically recommended "treatment" under NDCC 65–05–28(4). The statute says benefits may be suspended if the employee refuses to reasonably participate in treatment. This language contemplates some element of discretion to refuse the "treatment" and, if it is reasonable to refuse treatment, his benefits may not be suspended. The first part of the statute allows suspension of benefits if the employee refuses to "submit to" an "examination." This language contemplates the Bureau may compel the employee to undergo examination or testing, without discretion to refuse.

[¶ 15] Our interpretation is assisted by the close proximity of, and the similarity of language between, the subsection authorizing the Bureau to compel an examination and the subsection allowing suspension for refusal to "submit to" an examination. Subsection 3 of NDCC 65–05–28 authorizes the Bureau to require an employee to "submit to" an "examination" for the purpose of reviewing the diagnosis, prognosis, treatment, or fees. Subsection 4 of NDCC 65–05–28 allows suspension of benefits if the employee refuses to "submit to" or intentionally obstructs an "examination." These parallel provisions with

identical language lead to the conclusion the "examination" referred to in NDCC 65–05–28(4) is an examination that may be compelled by the Bureau, and not medical or other "treatment" reasonably controllable by the patient.

[¶ 16] Accordingly, we conclude the Bureau may suspend benefits for an employee's refusal to reasonably participate under NDCC 65–05–28(4) only if the particular procedure constituted "treatment."

■ [¶ 17] Alternatively, the Bureau argues this FCE was in the nature of treatment, and therefore its suspension of Ali's benefits was appropriate. We disagree.

[¶ 18] "Treatment" is defined as "the steps taken to effect a cure of an injury or disease." Black's Law Dictionary 1502 (6th ed.1990). Treatment is by nature therapeutic. The testimony in this record is that the FCE is a two-day test used to determine the employee's "physical capabilities for return to work." The test includes hand coordination, grip strength, lifting, carrying, crawling, and walking. There was no testimony or other evidence that the FCE in any way leads to a cure or improvement of the injury, and counsel for the Bureau conceded at oral argument the FCE was not "therapeutic."

[¶ 19] On this record, we conclude the FCE was an "examination" directed by the Bureau, and was not part of Ali's "treatment." To support suspension of benefits under NDCC 65–05–28(4), then, the Bureau would have to demonstrate Ali refused to submit to or intentionally obstructed the FCE. The Bureau does not claim Ali failed to submit to the FCE, and the findings adopted by the Bureau specifically conclude Ali did not intentionally obstruct the FCE. Therefore, there is no basis for suspension of Ali's benefits under NDCC 65–05–28(4), and the Bureau's decision is not in accordance with the law.

[¶ 20] Still, the Bureau asserts its decision is supported by *Theige v. North Dakota Workers Compensation Bureau*, 1997 ND 160, 567 N.W.2d 334. Although *Theige* involved suspension of benefits for an invalid FCE result, that case is clearly different. The physical therapist who conducted the

two FCEs testified Theige had attempted to manipulate the test results. The ALJ and the Bureau found Theige had intentionally obstructed the test. We noted Theige had conceded the Bureau could suspend his benefits for intentional manipulation of the test results, and therefore found it unnecessary to construe NDCC 65–05–28(4). *See Theige* at ¶ 5, n. 1. In this case, there was no testimony that Ali attempted to intentionally manipulate the FCE results, and the Bureau specifically found she did not intentionally obstruct the FCEs.

[¶ 21] We reverse the judgment affirming the Bureau's order, and we remand for entry of judgment reversing the Bureau's order and reinstating Ali's benefits.

[¶ 22] MARING and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 23] The construction the majority places on N.D.C.C. § 65–05–28(4) is that only an intentional obstruction of the FCE results in the suspension of the right to claim compensation but that an unreasonable refusal to participate in the examination does not, although an unreasonable refusal to participate in treatment would suspend the right to claim compensation.

[¶ 24] The majority clings to the Administrative Law Judge's statement that "Claimant's performance in the FCE is not intentional obstruction of the FCE." However the ALJ went on to state "it is, however, a refusal to reasonably participate in FCE." Identifying a difference between "intentionally obstructs" and "refuses reasonably to participate in treatment," the majority opinion concludes the Bureau, relying on the ALJ, applied the wrong standard because the FCE is an "examination" rather than medical "treatment." I do not so easily set aside the ALJ's findings. Rather, I read the ALJ's statements as a generous and compassionate attempt to indicate to Ali what was required

of her under the law. I gather that from the ALJ's findings 12 and 13 as follows:

12. The Claimant's performance in the FCE is not intentional obstruction of the FCE; it is, however, a refusal to reasonably participate in FCE. Her inability to reasonably participate was due to real or imagined pain; she attempted to comply with the FCE test requirements but self-limited her performance due to pain. The Bureau suggests that it is imagined citing the inconsistencies of the Claimant's performance in the FCE's. All through the medical records there are questions raised about the cause of the Claimant's complaints and whether it is a factitious process. However, one of the final diagnoses from the Mayo Clinic is Chronic Pain Disorder and all three of the physical therapists who conducted the FCE's recommended a pain program. The Claimant's complaints about pain require attention of some kind if only to determine there is a physiological basis for it.

13. Although language did not affect the Claimant's performance of the FCE, culture may have. Through the Claimant's attorney or otherwise, the Bureau should explain to the Claimant its responsibilities to the Claimant, the questions raised in the record of this hearing and elsewhere about the Claimant's complaints, the purpose served by the importance of the FCE, and what happens when a successful FCE is accomplished.

Consideration should be given for a pain program and then the Claimant should be permitted another chance to successfully complete a FCE.[1]

[¶ 25] The majority's fine parsings of the statutory language were unknown to the ALJ. In fact, they were not argued by Ali. Rather, on appeal to this Court, Ali's counsel phrased the issues as:

I.

Whether the Bureau's Conclusion of Law that Ali refused reasonably to partici-

---

1. The Bureau adopted the ALJ's recommended finding in total including an order for another FCE after Ali participated in a pain program.

This never happened as Ali took an immediate appeal to the district court.

pate in medical treatment is supported by the Bureau's findings?

## II.

Whether the Bureau acted in an impermissably adversarial manner when it failed to address the unrefuted evidence that Ali should have treatment for chronic pain prior to undergoing additional Functional Capacity Evaluations ("FCEs")?

## III.

Whether the preponderance of the evidence establishes that Ali's ability to perform adequately in the FCEs was limited by her chronic pain and, therefore, that she *did* reasonably participate in medical treatment as required by N.D.C.C. § 65–05–28(4)?

Thus, Ali also seems to rely on the "refused reasonably" standard and argues that her failure to fully participate was not unreasonable.

[¶ 26] I believe the correct reading of the statute is to deny compensation to a claimant who unreasonably refuses to participate in the FCE. The Bureau, adopting the ALJ's recommended findings, found Ali did reasonably refuse to participate. Therefore *Theige v. North Dakota Workers Comp. Bureau,* 1997 ND 160, 567 N.W.2d 334 is indistinguishable. I would affirm.

[¶ 27] SANDSTROM, J., concurs.