1998 ND 175

**Maynard ZUEGER, Claimant and Appellant,**

v.

**The NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
Appellee,

and

**H.A. Thompson & Sons, Inc., Respondent.**

**Civil No. 980035.**

Supreme Court of North Dakota.

Sept. 29, 1998.

Dean J. Haas, of Dietz, Little & Haas, Bismarck, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, Bismarck, for appellee.

MESCHKE, Justice.

[¶ 1] Maynard Zueger appealed a judgment affirming the Workers Compensation Bureau's order terminating all of Zueger's future benefits and ordering him to repay $7,808 in disability benefits he had previously received. We conclude Zueger's performance on a functional capacity evaluation was not a "false statement" under N.D.C.C. § 65–05–33, and the Bureau erred in terminating all benefits on that basis. Accordingly, we reverse and remand.

[¶ 2] In 1990, Zueger injured his back in a work-related accident. The Bureau accepted his claim and paid benefits. As a result of his accident, Zueger had two surgeries on his back—a discectomy in 1993 and an intertransverse fusion in 1994. Zueger remained off of work and received disability benefits through 1995.

[¶ 3] In July 1995, Zueger's doctor rated Zueger's permanent partial impairment (PPI) at twenty percent of the whole body. The Bureau disagreed with the doctor's analysis and, on January 8, 1996, ordered a ten percent PPI award. Zueger requested reconsideration of the PPI award.[1]

[¶ 4] In September and October 1995, an investigator hired by the Bureau videotaped

Zueger and some friends building a garage on his property. The Bureau later directed Zueger to undergo a functional capacity evaluation (FCE) on February 15, 1996. The occupational therapist who conducted the FCE noted Zueger had self-limited his performance on some parts of the test because of reported pain and numbness. The therapist did not, however, conclude the test was invalid, and indicated Zueger was capable of performing work at a sedentary level. The Bureau later showed the therapist the videotape of Zueger working on his garage several months before the FCE. The therapist wrote the Bureau to note discrepancies between Zueger's activities on the tape and his performance on the FCE. She indicated the work level shown in the videotape was "in the medium work category at least."

[¶ 5] On May 8, 1996, the Bureau issued a notice of intention to discontinue benefits for false statements under N.D.C.C. § 65–05–33. Zueger petitioned for reconsideration, and the Bureau issued an order denying further benefits and directing repayment of $7,808 in disability benefits Zueger had received.

[¶ 6] Zueger petitioned for rehearing that was held before an administrative law judge (ALJ) on March 18, 1997. The Bureau adopted the recommended findings of fact, conclusions of law, and order of the ALJ, who concluded Zueger's performance on the FCE constituted a "false statement" under N.D.C.C. § 65–05–33. The Bureau ordered Zueger to repay $7,808 in disability benefits dating back to September 25, 1995, the date of the first videotaping, and terminated all future benefits in connection with the injury, including the pending PPI award. Zueger appealed to the district court who affirmed the Bureau's order. Zueger then appealed to this Court.

[¶ 7] We review the record and decision of the Bureau rather than the district court's decision. *McDaniel v. North Dakota Workers Compensation Bureau*, 1997 ND 154, ¶ 11, 567 N.W.2d 833. As we explained in *Loberg v. North Dakota Workers Compensation Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221, under N.D.C.C. §§ 28–32–19 and 28–32–

---

1. Because, for other reasons, the Bureau eventually terminated all of Zueger's benefits, including the PPI award, the dispute over the degree of Zueger's impairment has never been resolved.

21, we will affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or the Bureau's rules or procedures deprived the claimant of a fair hearing.

[¶ 8] In terminating Zueger's benefits, the Bureau relied solely upon N.D.C.C. § 65–05–33 [2]:

> *Filing false claim or false statements— Penalty.* Any person claiming benefits or payment for services under this title, who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor, but if the act is committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or services, the offense is a class C felony. Provided further that:
>
> 1. For the purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense.
>
> 2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury.

**2.** Later, section 65–05–33 was amended. *See* 1997 N.D. Sess. Laws ch. 534, § 4.

**3.** The statute has since been amended, and now specifically includes deceptive conduct:

*Filing false claim or false statement—Penalty.*

As defined in subsection 1 of this statute, the Bureau argues Zueger's performance on the FCE was a "statement."

[¶ 9] Interpretation of a statute is a question of law fully reviewable by this Court. *Shiek v. North Dakota Workers Compensation Bureau,* 1998 ND 139, ¶ 16, 582 N.W.2d 639; *In re Estate of Opatz,* 554 N.W.2d 813, 815 (N.D.1996). Our primary purpose is to ascertain the intent of the legislature. *Shiek,* 1998 ND 139, ¶ 16, 582 N.W.2d 639; *State v. Schlotman,* 1998 ND 39, ¶ 10, 575 N.W.2d 208. In ascertaining legislative intent, we look first to the language of the statute as a whole, construing the words in their plain, ordinary, and commonly understood sense. *Singha v. North Dakota State Board of Medical Examiners,* 1998 ND 42, ¶ 16, 574 N.W.2d 838; *Little v. Traynor,* 1997 ND 128, ¶ 37, 565 N.W.2d 766. If the statutory language is clear and unambiguous, we do not disregard the letter of the statute under the pretext of pursuing its spirit, because the intent is presumed clear from the face of the statute. *Singha,* 1998 ND 42, ¶ 16, 574 N.W.2d 838; *Little,* 1997 ND 128, ¶ 37, 565 N.W.2d 766. However, if the statute is susceptible to differing but rational meanings the statute is ambiguous and we may look to extrinsic aids to construe it. *Singha,* 1998 ND 42, ¶ 16, 574 N.W.2d 838; *Medcenter One, Inc. v. North Dakota State Board of Pharmacy,* 1997 ND 54, ¶ 13, 561 N.W.2d 634. These principles guide our interpretation of N.D.C.C. § 65–05–33.

[¶ 10] The statute provides an exclusive list of items which are included in the definition of "statement." All of these items are oral or written verbal expressions. The Bureau relied solely on Zueger's "conduct" on the FCE, not on any verbal statement made during the FCE. The Bureau has not pinpointed which of the statutorily listed items Zueger's conduct falls under, but argues it must be covered generically under "the plain language of the statute." We do not read the plain language of the statute to unambiguously cover nonverbal conduct on an FCE.[3]

1. A person is guilty of a class A misdemeanor if that person is claiming benefits or payment for services under this title, and that person:
a. Willfully files a false claim or makes a false statement.

In its "plain, ordinary, and commonly understood sense," the word "statement" does not include nonverbal conduct.

■ [¶ 11] Generally, the law is what the legislature says, not what is unsaid, and the mention of one thing implies the exclusion of another. *Little v. Tracy*, 497 N.W.2d 700, 705 (N.D.1993). It might, however, be plausibly argued that nonverbal conduct on an FCE could be a "test result[ ]" or "other evidence of loss, injury, or expense." *See* N.D.C.C. § 65–05–33(1). Accordingly, for Zueger's performance on the FCE, the statute might be susceptible to differing rational meanings and thus ambiguous.

■ [¶ 12] In clarifying the meaning of N.D.C.C. § 65–05–33, we must interpret the statute in context and consider other statutory provisions on the same subject matter. *Boger v. North Dakota Workers Compensation Bureau*, 1998 ND 131, ¶ 15, 581 N.W.2d 463; *Raboin v. North Dakota Workers Compensation Bureau*, 1997 ND 221, ¶ 16, 571 N.W.2d 833. The consequences of a particular construction matter. N.D.C.C. § 1–02–39(5). We construe the Workers Compensation Act to afford relief and avoid forfeiture. *Kallhoff v. North Dakota Workers' Compensation Bureau*, 484 N.W.2d 510, 513 (N.D. 1992). When statutes are on the same subject matter, we make every effort to harmonize and give meaningful effect to each statute without rendering one or the other largely useless. *Boger*, 1998 ND 131, ¶ 15, 581 N.W.2d 463; *Raboin*, 1997 ND 221, ¶ 16, 571 N.W.2d 833. We are bound to give meaning and effect to every word, phrase, and sentence. *Ali v. North Dakota Workers Compensation Bureau*, 1998 ND 146, ¶ 12, 583 N.W.2d 115; *Jones v. Billings County School District # 1*, 1997 ND 173, ¶ 12, 568 N.W.2d 477. As *Ali*, 1998 ND 146, ¶ 12, 583 N.W.2d 115, directs, all parts of a statute must be construed to have meaning because the law neither does nor requires idle acts.

■ [¶ 13] In this case, another section of the Workers Compensation Act expressly covers Zueger's alleged conduct on the FCE. Section 65–05–28(4), N.D.C.C., says:

> If an employee, or the employee's representative, refuses to submit to, or in any way intentionally obstructs, any examination, or refuses reasonably to participate in medical or other treatments, the employee's right to claim compensation under this title is suspended until the refusal or obstruction ceases. No compensation is payable while the refusal or obstruction continues, and the period of the refusal or obstruction must be deducted from the period for which compensation is payable to the employee.

We have held that a claimant who attempts to manipulate an FCE by willfully failing to perform to the full extent of his or her abilities can be found to have intentionally obstructed the test, and benefits may be suspended under N.D.C.C. § 65–05–28(4). *See Ali*, 1998 ND 146, ¶ 20, 583 N.W.2d 115; *Theige v. North Dakota Workers Compensation Bureau*, 1997 ND 160, ¶¶ 8–11, 567 N.W.2d 334. If the Bureau found Zueger had intentionally obstructed the FCE, it could have suspended his benefits under

---

b. *Willfully misrepresents that person's physical condition, including deceptive conduct which misrepresents that person's physical ability.*

\* \* \* \* \* \*

2. If any of the acts in subsection 1 are committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or payment for services, the offense is a class C felony.

3. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury.

4. For purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense. N.D.C.C. § 65–05–33 (emphasis added). The language of this 1997 amendment, and particularly its legislative history, reinforces the conclusion the pre–1997 version of the statute did not cover nonverbal conduct on an FCE. *See* Bill Summary of 1997 H.B. 1263 (prepared by the Bureau); Testimony of Bureau attorney David L. Thiele on H.B. 1263, House Industry, Business and Labor Committee, Feb. 3, 1997; Testimony of Bureau attorney David L. Thiele on H.B. 1263, Senate Industry, Business and Labor Committee, March 12, 1997.

N.D.C.C. § 65–05–28(4). Instead, the Bureau attempted to "shoehorn" his performance on the FCE into the statutory definition of false statement in N.D.C.C. § 65–05–33, and thereby "bootstrap" his conduct into the more severe penalties for false statements. *Compare* N.D.C.C. § 65–05–28(4) (allowing suspension of benefits "until the refusal or obstruction ceases") *with* N.D.C.C. § 65–05–33(2) (pre–1997 version) (allowing forfeiture of all "additional benefits" and recoupment of prior benefits which were "based upon the ... false statement"). In N.D.C.C. § 65–05–28(4), the Bureau had an effective enforcement procedure, but chose not to use it. Instead of the specific interim suspension of benefits authorized for intentionally obstructive conduct, the Bureau sought to forfeit all benefits, past, present and future.

[¶ 14] We must construe N.D.C.C. §§ 65–05–28(4) and 65–05–33 together and harmonize them, giving meaning to each without rendering either largely meaningless. *Boger*, 1998 ND 131, ¶ 15, 581 N.W.2d 463; *Raboin*, 1997 ND 221, ¶ 16, 571 N.W.2d 833. If we adopted the interpretation urged by the Bureau, construing a "statement" under N.D.C.C. § 65–05–33(1) to include nonverbal conduct on an FCE, it would render N.D.C.C. § 65–05–28(4) largely meaningless. Accordingly, we conclude that Zueger's nonverbal conduct on an FCE was not a "statement" under N.D.C.C. § 65–05–33(1), and the Bureau therefore erred as a matter of law in concluding Zueger's performance on the FCE was a false statement.

[¶ 15] We reverse the judgment affirming the Bureau's order and remand.

[¶ 16] MARING and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 17] I dissent. Relying on a subsequent statute not in effect at the time of the FCE test to reinforce its construction, the majority transforms an applicable statute into one which apparently had little or no meaning insofar as false tests are concerned. The majority glosses over the definition of "state-

ment" in N.D.C.C. § 65–05–33(1), prior to amendment: "statement" includes "test results, or other evidence of loss, injury or expense." I do not read the legislative history as to the reason for the amending legislation as does the majority. The Bureau's comment states that "[s]pecifically" the amendment includes willful misrepresentation of the person's physical condition by deceptive conduct which misrepresents the person's physical ability. The comment also asserts that "[t]his deceit is punishable in other jurisdictions as malingering or as a false statement." I read the comment to imply that it could be similarly "punished" under North Dakota law but that the Bureau was seeking specific declaration to that effect. Thus, I believe this is an amendment intended to clarify existing law under *Effertz v. North Dakota Workers Compensation Bureau*, 525 N.W.2d 691 (N.D.1994).

[¶ 18] We should not discourage clarification of statutes with the threat that clarifications may be used to render useless existing law.

[¶ 19] When the statute is clear and unambiguous, we look only to the face of the statute to determine legislative intent, *In re Craig*, 545 N.W.2d 764 (N.D.1996), and when the statute is clear and unambiguous, we cannot disregard it under the pretext of pursuing legislative intent. *Adams County Record v. Greater North Dakota Ass'n*, 529 N.W.2d 830 (N.D.1995). We should not create ambiguity where none exists by reference to another statute although I agree we construe statutes as a whole. A plain reading of the definition of statement includes "test results."

[¶ 20] The majority accuses the Bureau of attempting to "shoehorn" Zueger's performance on the FCE into the statutory definition of a false statement and thereby "bootstrap" the more severe penalties for false statements. I suggest the majority opinion illustrates the majority's dislike for penalties—penalties the application of which a majority of the court continues to attempt to avoid by statutory construction if at all possible. *See Ali v. North Dakota Workers Compensation Bureau*, 1998 ND 146, 583 N.W.2d 115 (holding unreasonable refusal to partici-

pate in FCE is not an intentional obstruction for purposes suspending right to claim compensation under N.D.C.C. § 65–05–28); *Hopfauf v. North Dakota Workers Comp. Bureau,* 1998 ND 40, 575 N.W.2d 436 (holding ALJ did not specifically find false statements to be "willful" for purposes of forfeiting future benefits under N.D.C.C. § 65–05–33).

[¶ 21] It is elementary that under separation of powers the decision to enact the penalty provisions is one for the legislative branch and the decision to seek those remedies is one for the executive branch of government. It is not the function of the judicial branch to circumvent those decisions.

[¶ 22] I would affirm the judgment of the district court affirming the order of the Bureau.

[¶ 23] SANDSTROM, J., concurs.